## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————————
                                          )
**RLI INSURANCE COMPANY,**                )
                                          )
    **Plaintiff and**                 )
    **Counterclaim-Defendant,**        )       **Civil Action No.**
                                          )       **09-40024-FDS**
    **v.**                            )
                                          )
**HENRIQUE ROCHA SANTOS, BELI R.**        )
**LIMA, and MARIA LOPES,**                )
                                          )
    **Defendants and**                 )
    **Counterclaim-Plaintiffs.**       )
—————————————————————————)

## MEMORANDUM AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a declaratory judgment action arising out of a personal umbrella insurance policy

issued by plaintiff RLI Insurance Company to defendant Beli R. Lima.  Lima's 17-year-old son,

defendant Henrique Rocha Santos, was involved in an automobile collision with defendant

Maria Lopes in October 2006.  Lopes filed a claim with RLI under Lima's policy.  RLI denied

coverage, stating that the policy was void because Lima had made material misrepresentations

about the number of drivers in her household when she renewed the policy.

On January 14, 2009, Lopes initiated a personal injury action against Santos.  RLI filed

this action on February 2, 2009, requesting a declaratory judgment that the policy does not cover

the claims by Lopes against Santos.[1]  Lopes and Santos have counterclaimed, alleging violations

---

[1] RLI moved for default judgment in this action against defendants Lima and Santos on June 29, 2009.  The Court interpreted the motion as a motion for entry of default, which it granted on July 22, 2009.  Lima and Santos subsequently moved for the Court to set aside the entry of default on August 24, 2009.  The Court granted the motion as to Santos, but denied it as to Lima—who remains in default—on October 5, 2009.

of Mass. Gen. Laws ch. 93A and 176D (Counts 1 and 3).  Santos has also asserted a counterclaim for breach of contract (Count 2).

RLI and defendants have filed cross-motions for summary judgment.  For the reasons set forth below, defendants' motion for summary judgment is denied and RLI's motion for summary judgment is granted.

## I.    Background

The facts are not disputed except where noted otherwise.

### A.    The RLI Insurance Policy

On August 31, 2005, Beli Lima signed an application for a personal umbrella liability policy with RLI Insurance Company.  (Edelstein Aff. Ex. 4).[2]  She completed the application with the assistance of Michele Muldoon from the Mancuso-Nowak Insurance Agency.  (Lima Dep. 8, 11-20).[3]  Someone other than Lima had filled in at least some parts of the application form.[4]  The answers on the application indicated two drivers in the household—Lima and her husband—and that neither was under the age of 22.  (Edelstein Aff. Ex. 4).  At the time, Lima's son, Henrique Rocha Santos, did not have a learner's permit or driver's license.  (Edelstein Aff. Ex. 22).

---

[2] At the time of the accident, Lima appears to have had a primary homeowner's policy and a primary automobile policy from OneBeacon Insurance Company.  (Hassett Mem. Ex. A; Edelstein Aff. Ex. 24).

[3] Defendants contend that Lima's first language is Portuguese and that she enlisted the help of Mancuso-Nowak employees because she had difficulty understanding the forms, which were written in English.  RLI contends that the record does not indicate Lima's first language.  Muldoon also stated in her affidavit that Lima never raised concerns about having any difficulty understanding RLI applications or renewal applications in general because they were printed in English.  (Supp. Edelstein Aff. Ex. A at 118).  This dispute need not be resolved for present purposes.

[4] Defendants contend that Muldoon filled out the entire form and that Lima only signed it.  RLI agrees only that some of the writing on the application was not Lima's, and that some of it is in Muldoon's handwriting.

RLI personal umbrella liability policies are self-underwriting, meaning that the information applicants provide in the application determines whether RLI will issue a policy and, if issued, what premium will be charged.  (Dean Aff. ¶ 4).  Lima's responses to the questions in the 2005 application thus determined whether she and members of her household were eligible for a policy from RLI and, if so, whether she qualified for a "Standard" or "Standard II" class policy.  (Edelstein Aff. Ex. 4).  According to RLI, several factors influenced Lima's premium for the 2005 policy, including whether any driver in her household was an "inexperienced operator." (Edelstein Aff. Ex. 8; Dean Aff. ¶ 6).  RLI has determined that inexperienced operators have a higher risk of accidents, and therefore it charges a higher premium for policy holders who have an inexperienced operator living in their household.  (Dean Aff. ¶ 7; Edelstein Aff. Ex. 8).[5]

RLI accepted the application and issued a personal umbrella liability insurance policy to Lima, numbered PUP1026818.  The policy term was from September 10, 2005, to September 10, 2006.  (Dean Dep. 20, 50-51).

**B.**     **The July 2006 Renewal Application**

In July 2006, RLI advised Lima in writing that her personal umbrella policy would expire on September 10, 2006.  It provided her with a Personal Umbrella Liability Insurance Renewal Application.  (Edelstein Aff. Ex. 12).  The renewal application came with preprinted information that included Lima's name and mailing address, the form return date, the policy expiration date, the policy number, and the administrator phone number.  (*Id.*).  Underneath the printed line that stated "RLI Agent" was written the following:  "Mancuso-Nowak Ins. c/o The Number One Ins

---

[5] RLI's 2005 rate sheet defines "inexperienced operator" as "any driver with six years or less driving experience."  (Edelstein Aff. Ex. 8).

Agcy Inc." (*Id.*).[6]

The first portion of the application included a list of ten questions, each of which was followed by two columns. (*Id.*). The first column, entitled "Information on File," indicated the information that Lima had provided on her August 2005 application. (*Id.*). The second column, entitled "Make Corrections Below," provided blank spaces to make corrections. (*Id.*).

Lima filled out the application at home without any assistance by Mancuso-Nowak. (Lima Dep. 22). She corrected the "Information on File" only as to Questions 8 and 9. (Def. Mem. Ex. 6).[7]

Question 5 on the application asked for the number of drivers in the household. (Def. Mem. Ex. 6). It defined a "driver" as:

> '[Y]ou' and 'members of your household' who operate motor vehicles licensed for road use, plus any other person who operates a vehicle 50% or more which is owned, leased, rented or regularly operated by 'you' or a 'members [sic] of your household.'

(*Id.*). The "Information on File" indicated that there were two drivers in the household. (*Id.*). Lima did not make any correction to that number. (*Id.*).

At the time, Lima's 17-year-old son, Santos, was living with her and her husband. Santos had his learner's permit. (Edelstein Aff. Ex. 10; Lima Dep. 53-54). He was not permitted to use

---

[6] Number One is an RLI program administrator that acts as a "middle m[a]n for retail agents" such as Mancuso-Nowak. Its responsibilities include reviewing applications for completeness, accuracy, and acceptability, based on RLI's underwriting criteria, as well as handling inquiries from retail agents and the insured. (Dean Dep. 12-14; Tobin Dep. 12-18).

[7] Question 8 asked, "How many moving violations have all drivers had within the last 3 years?" Question 9 asked, "How many at-fault accidents have all drivers had in the last 3 years?" and included a definition of at-fault accidents. Lima placed a number "1" in the "Make Corrections Below" column next to both questions. The pre-printed numbers in the "Information on File" column were "1" for Question 8 and "2" for Question 9. The fact that Lima placed a "1" in the corrections column next to Question 8, which already had a number "1" on the "Information on File" column suggests some confusion about the form.

Lima's car and only drove when at a "driver's school" where he was enrolled.  (Lima Dep. 53-54).  Lima testified at her deposition that she understood the language of Question 5 to mean that she did not need to count Santos as a driver in connection with the renewal policy.  (*Id.*).

As a follow-up to Question 5, Question 6 asked:

How many drivers are under the age of 22?  (Also include drivers with a learner's permit.  In Kansas and Massachusetts, count only those drivers with six years or less driving experience.  Driving with a permit is not considered driving experience and should therefore not be included within the six years as driving experience.)

(Def. Mem. Ex. 6).  The "Information on File" indicated that there were no drivers under the age of 22 living in the household.  (*Id.*).  Again, Lima did not make any correction.

Question 12 asked, "Has any one driver had more than 3 moving violations in the last 3 years?"  Lima did not answer it.  (*Id.*).

Question 16 asked whether the applicant and members of her household agreed to maintain the minimum limits of liability coverage required by the umbrella policy.  (Def. Mem. Ex. 6).  Lima circled the letter "N."[8]

The renewal application included the following "APPLICANT STATEMENT":

The information given on this application is true and complete to the best of my knowledge.  I understand that any omission or misstatement of fact in the information given, which if known by RLI Insurance Company would have caused RLI Insurance Company to decline this application, is grounds for voiding the policy.

(Def. Mem. Ex. 6).  Lima signed and dated the form on July 5.  It is unclear how the form was sent to RLI.

---

[8] Question 17 asked what level of automobile liability coverage Lima and all members of her household agreed to maintain during the policy period.  (*Id.*).  Lima circled letter "A," indicating that she and all members of her household agreed to maintain certain minimum coverage levels.  (*Id.*).

On July 14, 2006, Santos received his driver's license.  (Edelstein Aff. Ex. 22; Lima Dep. 24).  RLI received the renewal application on the same day.  (*Id.*; Dean Dep. 27).

RLI considered the application incomplete because Lima did not answer Question 12 and answered "no" to Question 16.  As a result, RLI issued a notice of non-renewal to Lima.

### C.    The August 2006 Renewal Application

In August 2006, RLI received a completed renewal application by fax.  The August application had the same basic content and layout as the July application.  (Hassett Mem. Ex. B).  However, the August application did not contain any pre-printed information about the insured's name, the policy number, or the name of RLI's agents and did not have any numbers pre-printed in the "Information on File" column.  (*Id.*).[9]  Instead, the application as completed contained various handwritten notations.  (*Id.*).

Like the July application, the August application did not disclose the presence of a 17-year-old driver in Lima's household.

Exactly how the application was created is unclear.  It appears that two different versions were faxed from Mancuso-Nowak at different times.  (Edelstein Aff. Ex. 17; Hassett Mem. Ex. B).  For present purposes, the differences between the two are not material.

Lima testified that she does not recall any events surrounding the August application.  (Lima Dep. 25-27, 46-47).  Specifically, she said that she does not recall ever seeing the form, completing it, or speaking to anyone at Mancuso-Nowak about it.  (*Id.*).  She does not recall

---

[9] An RLI representative testified that the August renewal form was not sent directly from RLI to Lima. (Dean Dep. 34).  She was unsure who had sent it to Lima.  (*Id.*).  Muldoon testified that Mancuso-Nowak is able to obtain blank renewal forms from RLI's website.  (Muldoon Dep. 72).  Although she does not specifically recall if she obtained the form from the website in this instance, it is at least possible that this is why the form did not contain any pre-printed information.

signing it.  (*Id.*).  She also testified that the signature on the August application was not hers and

that she did not recognize it.  (*Id.* at 46-47).

Muldoon gave apparently contradictory testimony concerning the completion of the

August application.  At one point, she testified that she recalled meeting with and assisting Lima

with the completion of the application and that the application was blank when Lima arrived for

the meeting.  (Muldoon Dep. 60-62).  However, on cross-examination, she testified that she did

not remember meeting with Lima to fill out the application, and that their meeting might have

been only to make a correction to Question 13 on the form.  (*Id.* at 73-74).[10]

Both the July and August application forms included the statement,  "APPLICATION

WILL NOT BE ACCEPTED WITHOUT APPLICANT'S ORIGINAL SIGNATURE."  (Hassett

Mem. Ex. B).

In any event, after receiving the August application, RLI considered Lima's application

to be complete.  It issued her a personal umbrella policy for the period from September 10, 2006,

to September 10, 2007.  (Def. Mem. Ex. 3; Edelstein Aff. Ex. 2; Dean Dep. 33).  The annual

premium was $224.  (Edelstein Aff. Ex. 2).[11]

### D.      Developments in September 2006

On September 6, 2006, Santos applied for his own primary automobile insurance policy

with Commerce Insurance Company.  He named himself and Lima as authorized drivers on one

---

[10] Muldoon acknowledges that some of the handwriting on the August application is her own.  (*Id.*;
Muldoon Dep. 60-64).  She also testified that she did not recall signing Lima's name to the form for her.  (Muldoon
Dep. 38, 119-120).

[11] According to RLI, if Lima had reported that there was a third driver in her household who was under the
age of 22, she would have been issued a plan with a $358 premium and all drivers in her household would have been
required to maintain liability limits of $500,000 on the underlying automobile policy.  (Pl.'s Statement of Undisputed
Facts ¶¶ 12, 36, Feb. 22, 2010; Pl.'s Mem. for Summ. J. 5).

vehicle.  (Edelstein Aff. Ex. 23).  He was also added as a deferred driver to Lima's primary

automobile insurance policy with OneBeacon Insurance.  (*Id.* Ex. 24).

Lima did not advise RLI that Santos had obtained his driver's license.  On September 10,

2006, the renewed RLI policy came into effect.

### E.      **The Accident**

On October 5, 2006, Santos and Lopes were involved in a serious motor vehicle accident

in Shrewsbury, Massachusetts.  (Hassett Aff. ¶ 6).  The accident occurred when Santos crossed

the center line into the westbound lane and struck Lopes's vehicle head-on.  (*Id.* at ¶ 7).  Lopes

sustained serious and permanent injuries.  (*Id.* at ¶ 8).

### F.      **The Insurance Claim**

RLI received notice of the collision on November 28, 2006.  (Edelstein Edelstein Aff.

Exs. 25, 26; Dean Dep. 11-12).  It assigned a claims examiner to conduct an investigation.

(Edelstein Aff. Ex. 15; Dean Dep. 23, 24).[12]

In a letter to Lima on March 27, 2007, RLI stated that it "reserve[d] its right to assert that

there has been a material misrepresentation made in the renewal application signed by [her] on

July 5, 2006, and further reserve[d] the right to tender the return premium and rescind the policy

as void."  (Def. Mem. Ex. 11 at 1; Dean Dep. 54).  The letter specifically referred to Lima's

---

[12] As part of its investigation from November 2006 to April 2007, RLI communicated with Santos's
primary insurer, Commerce, to obtain details about the collision, to gather information concerning Santos's primary
automobile insurance coverage, and to address claimant's failure to provide medical records and bills.  (Edelstein
Aff. Exs. 15, 27, 28; Dean Dep. 26, 37, 38).  RLI also spoke with personnel at Number One and obtained Santos's
driver's records, copies of Lima's original and renewal applications for the RLI policy, and copies of the policy
declarations.  (Edelstein Aff. Exs. 10, 15, 29, 30; Dean Dep. 26, 37-38, 42).  RLI did not discuss the renewal
application forms, or the alleged misrepresentations, with Lima herself,  (Dean Dep. 63-64; Lima Dep. 37), though it
did request that she submit any "additional factual information or legal authority that is relevant to our coverage
analysis" in both of its letters to her.  (Edelstein Aff. Exs. 31, 32).

responses to Questions 5 and 6 on the July renewal application, which requested the number of drivers in the household and asked whether any drivers were under the age of 22.  (Def. Mem. Ex. 11 at 4-5).

In a letter to Lima on April 20, 2007, RLI declined coverage.  The letter stated that the basis for denial was that Lima had made material misrepresentations in her August renewal application on questions 5 and 6 by not including Santos as a driver under the age of 22.  (Def. Mem. Ex. 12; Dean Dep. 57, 63-64).  In a portion of the letter titled "General Reservation," RLI stated that "[the] letter [was] not an exhaustive listing of all of the terms, conditions, exclusions or limitations . . . which might bar or limit RLI's obligations in this matter.  There may be other facts and circumstances . . . which would further serve to relieve RLI of any duty." (Edelstein Aff. Ex.32).

## G.      Post-Claim Denial Communications and Litigation

Neither Lima nor Santos ever personally responded to RLI's March and April 2007 letters, though the letters each requested them to submit any additional factual information relevant to the coverage analysis.  (Dean Aff. ¶ 11; Edelstein Aff. Exs. 31-32).  On February 21, 2008, Lopes's counsel sent a letter of representation to RLI.  (Edelstein Aff. Ex. 33).  Lopes's counsel requested information concerning the RLI policy as well as RLI's coverage position by telephone.  (*Id.* at Ex. 27).  RLI responded by telephone on February 29, 2008 and requested that Lopes's counsel submit a written request for the information.  (*Id.*).

On September 23, 2008, Lopes's counsel made a written request for information and submitted a written demand for coverage under the RLI policy.  (*Id.* at Ex. 34).  Attached to the demand for coverage were medical bills and records, information regarding Lopes's alleged lost

wages, and the police report from the date of the collision.  (*Id.*).  On September 26, 2008, and

October 3, 2008, RLI responded in writing to counsel for Lopes, disclosing information

concerning the policy and explaining the basis for its denial of coverage.  (*Id.* at Ex. 35).

On January 14, 2009, Lopes commenced a civil action against Santos in Worcester

Superior Court.  (*Id.* at Ex. 36; Hassett Aff. ¶ 4).  Commerce, Santos's primary carrier, defended

him in that action.  (Hassett Aff. ¶¶ 9,10).

On February 2, 2009, RLI filed its original complaint in this action.

On August 24, 2009, Santos and Lopes agreed to the entry of judgment against Santos on

all counts of the civil action in the amount of $950,000 plus interest at the statutory rate from the

date of entry of the action.  (Amend. Compl. Ex. B).  RLI was not provided with prior notice of

this agreement.  (Dean Aff. ¶ 12).  Commerce ultimately tendered Santos's policy limit of

$100,000 to Lopes.  (*Id.* at ¶¶ 9, 10).

On November 30, 2009, Santos and Lopes made a written demand under Mass. Gen.

Laws ch. 93A to RLI.  (Edelstein Aff. Ex. 37).

## II.   <u>Standard of Review</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50

F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In

making this determination, the Court views "the record in the light most favorable to the

nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20,

25 (1st Cir. 2009).

**III.    Analysis**

   **A.    RLI's Claim for Declaratory Judgment**

   RLI has moved for summary judgment on its declaratory judgment claim on two alternate

grounds.  First, it contends that Lima's failure to disclose Santos' status as a driver under the age

of 22—whether on the July application, the August application, or at any time after Santos

received his driver's license and before the renewal policy became effective—was a material

misrepresentation that voided the policy.  Second, it contends that an applicant's signature on the

renewal application is a condition precedent to receiving insurance coverage and that Lima is

barred from recovering under the policy if she did not sign the August renewal application, as

she alleges.

   In Massachusetts, an insurer may void an insurance policy if the policyholder failed to

disclose "material" facts when requested to do so in an application for the insurance.  *See

Barnstable Cnty. Ins. Co. v. Gale*, 425 Mass. 126, 127-28 (Mass. 1997).  There is, however, a

limitation imposed by statute as to the insurer's ability to void the policy.  Mass. Gen. Laws ch.

175, § 186(a) provides:

>    No oral or written misrepresentation or warranty made in the negotiation of a
>    policy of insurance by the insured or in his behalf shall be deemed material or
>    defeat or avoid the policy or prevent its attaching unless such misrepresentation or
>    warranty is made with actual intent to deceive, or unless the matter
>    misrepresented or made a warranty increased the risk of loss.

A fact is regarded as "material" if "the knowledge or ignorance of [it] would naturally influence

the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium." *Employers' Liab. Assur. Corp. v. Vella*, 366 Mass. 651, 655 (Mass. 1975); *see also Barnstable Cnty.*, 425 Mass. at 128; *Daniels v. Hudson River Fire Ins. Co.*, 66 Mass. 416, 417 (Mass. 1853).  Thus, an insurer may void a policy even if the policyholder made an "innocent misrepresentation of a material fact" if the disclosure of the truth would have affected the insurer's decision in fixing the rate of premium. *Northwestern Mut. Life Ins. Co. v. Iannacchino*, 950 F. Supp. 28, 31 (D. Mass. 1997); *see also Barnstable Cnty.*, 425 Mass. at 128 ("for purposes of G.L. c. 175, § 186, a fact is deemed material if it influences the premium"); *Hanover Ins. Co. v. Leeds*, 42 Mass. App. Ct. 54, 57, 59-60 (Mass. App. Ct. 1997) (affirming declaratory judgment in insurer's favor given policyholder's failure to give accurate information as to the location of her automobile, which, if disclosed, would have resulted in a higher premium).

### 1.      Whether Lima Made a Misrepresentation in the Renewal Application

#### a.      The July Renewal Application

RLI first contends that Lima made a material misrepresentation on the July renewal application.  Question 5 of the renewal application asked for the number of drivers in the household, and defined "driver" as "'you' and 'members of your household' who operate motor vehicles licensed for road use. . . ."  At the time that Lima filled out the July renewal application, Santos was a holder of a learner's permit.  Because he had such a permit, he was legally permitted to operate automobiles (and did so at the driver's school where he was enrolled). Lima did not, however, indicate on the application that Santos was a driver who was a member of her household.  Santos fit within the definition of "driver" on Question 5, and Lima's response

was thus incorrect.

Question 6 asked whether any drivers in the household were under the age of 22.  It specifically instructed the applicant to "include drivers with a learner's permit."  It added that, in Massachusetts, "only those drivers with six years or less driving experience" should be included, and that "driving with a permit is not considered driving experience and should therefore not be included within the six years as driving experience."  Lima indicated that there were no drivers under 22 in her household.  Santos was a driver under 22 with less than six years of driving experience, and thus Lima's response to Question 6 was also incorrect.

Defendants contend that Questions 5 and 6 on the July renewal application were ambiguous as a matter of law and, therefore, Lima's responses cannot be considered misrepresentations.  As to Question 5, defendants note that the definition of "driver" did not explicitly refer to individuals, such as Santos, who had learner's permits.  As to Question 6, defendants concede that the first sentence instructs the applicant to "include drivers with a learner's permit" in her answer.  They contend, however, that the two sentences that follow make the question confusing and ambiguous.  Specifically, they argue that a person could reasonably interpret the question to mean that an individual who holds a learner's permit does not have any "driving experience" (because this experience is not counted towards the six-year requirement) and therefore does not qualify as a "driver" under Questions 5 or 6.

It is well-settled that "where there is more than one rational interpretation of policy language, 'the insured is entitled to the benefit of the one that is more favorable to it.'"  *See Hingham Mut. Fire Ins. Co. v. Mercurio*, 71 Mass. App. Ct. 21, 24 (Mass. App. Ct. 2008) (citing *Hakim v. Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 281 (Mass. 1997)).

However, even assuming that Question 5 is ambiguous—a question that the Court does not

reach—Question 6 is not.  Question 6 tells the applicant, clearly and directly, to "include drivers

with a learners permit."  That statement is not ambiguous as a matter of law.

It is true that Question 6 goes on to state that in Massachusetts, only those drivers with

six years or less driving experience should be included, and that "driving with a permit is not

considered driving experience and should therefore not be included within the six years as

driving experience."  The statement that "driving with a permit is not driving experience" is

clearly meant to be read along with, and in the context of, the rest of the sentence.  Defendants'

reading of this question is tortured and would produce a nonsensical outcome.  This Court will

not read ambiguity into the renewal application where it does not exist.  *See, e.g., Arbella Mut.*

*Ins. Co. v. Feigo*, 2009 WL 1906418, *2 n.6 (Mass. App. Ct. Jul. 6, 2009) (rejecting arguments

that policy definitions were vague or ambiguous).  At a minimum, therefore, the July renewal

application contained misrepresentations in the response to Question 6.

### b.       The August Renewal Application

As noted, RLI did not accept the July application because it was incomplete.  It then

received a further application in August, well after Santos received his driver's license (on July

14).  RLI then issued the policy in September.  RLI contends that Lima did not provide truthful

answers on the August application and that this provides an additional basis for voiding the

policy.

Whether Lima actually signed or submitted the August application is a disputed issue of

material fact.  Drawing all inferences in the light most favorable to defendants, the Court must

assume that Lima did not sign or submit the August application.  If she did not sign or submit

that application, she could not have made any misrepresentations on it.

According to defendants, the misrepresentation inquiry should end there:  if RLI rejected the July application and issued the policy in reliance on the August application, and if Lima made no misrepresentation on the August application, the policy could not have been issued in reliance on any misrepresentation by Lima.  That argument, however, raises a threshold question:  if RLI rejected the July application, and Lima did not sign or submit the August application, how was an insurance contract formed between RLI and Lima?

### 2.    Whether a Contract Was Formed

RLI contends that defendants cannot collect under the policy because an applicant's signature on the renewal application is a condition precedent to receiving insurance coverage.  In other words, RLI contends that if Lima's testimony that she did not sign the August application is true, then the contract was not formed, and she cannot recover under the policy.

Defendants contend that Mancuso-Nowak employees filled out the renewal application without Lima's assistance and that, because Mancuso-Nowak is an agent of RLI, RLI is estopped from voiding the policy.  *See Guerrier v. Commerce Ins. Co.*, 66 Mass. App. Ct. 351 (Mass. App. Ct. 2006) (insurer equitably estopped from voiding policy where agent was responsible for misstatement in application signed in blank by insured).  They point to the July renewal application, which contained pre-printed information, including the language "RLI Agent: Mancuso-Nowak Ins."[13]

Even assuming that Mancuso-Nowak was RLI's agent—a question the Court does not

---

[13] RLI disputes that Mancuso-Nowak is its agent for these purposes, and has submitted substantial evidence to that effect.

reach—defendants' version of events would nonetheless preclude recovery.  It is true that an agency relationship would permit Mancuso-Nowak to bind RLI to a contract with Lima.  But under any circumstances, Lima would still need to have assented to that contract's formation.  In defendants' version of the facts, Lima had no knowledge of or involvement in the creation of the August application.  Under ordinary principles of contract formation, Lima's resulting lack of assent to the August application precludes the formation of any valid insurance contract between Lima and RLI.[14]

For this reason, defendants' reliance on *Guerrier* is misplaced.  In *Guerrier* and its predecessors, the insurer was estopped from voiding its policy based on the errors of its agent *only after* the insured had met with the agent, assented to buying the policy, and had detrimentally relied on that agent's assurances.  66 Mass. App. Ct. at 357 (finding estoppel where insured signed application in blank and  "rel[ied] on oral assurances from . . . [agent] to the effect that 'everything was fine' and that . . . [agent] would correctly complete the necessary forms for obtaining the insurance"); *accord Sullivan v. John Hancock Mut. Life. Ins. Co.*, 342 Mass. 649, 650-51 (Mass. 1961) (finding estoppel where insured had signed application and given truthful answers that had been incorrectly recorded by agent); *John Hancock Mut. Life Ins. Co. v. Schwarzer*, 354 Mass 327, 328 (1968) (same).  There is no evidence here that anyone at Mancuso-Nowak made any assurances to Lima, and likewise no evidence that Lima relied to her detriment on such assurances.[15]  As a result, RLI cannot be estopped from voiding the policy.

---

[14] If Mancuso-Nowak was or appeared to be *Lima's* agent, on the other hand, a valid insurance contract between RLI and Lima might have been formed when Mancuso-Nowak faxed the renewal application to The Number One Insurance Agency.  Defendants make no such claim here.

[15] Indeed, even assuming that Lima did in fact meet with someone at Mancuso-Nowak, she would still have to assent to the formation of the contract.  Defendants contend that Lima never signed the August application,

Furthermore, if the signature on the August application is not Lima's, the policy is voidable as a matter of law.  In Massachusetts, "[i]f an insured fails to satisfy a condition precedent, the coverage is void regardless of whether there was proof of an intent to deceive or an increased risk of loss." *Mass. Mut. Life Ins. Co. v. Fraidowitz*, 443 F.3d 128, 131 (1st Cir. 2006); *accord Krause v. Equitable Life Ins. Co. of Iowa*, 333 Mass. 200, 203 (Mass. 1955) (stating that if "conditions . . . were not satisfied[,] no contractual duty under the policy ever arose").  Whether a provision in an insurance policy application qualifies as a condition precedent is a question of law.  *Mass. Mut. Life. Ins. Co.*, 443 F.3d at 131 (citing *Kobico, Inc. v. Pipe*, 44 Mass. App. Ct. 103, 105 (Mass. App. Ct. 1997)).  A statement may become a condition of the policy if "(1) the statement made by the insured relates essentially to the insurer's intelligent decision to issue the policy; and (2) the statement is made a condition precedent to recovery under the policy, either by using the precise words 'condition precedent' or their equivalent." *Id.* (citing *Charles, Henry, & Crowley Co. v. Horne Ins. Co.*, 349 Mass. 723, 26 (Mass. 1965)).  The first part of the test turns on "[whether the] matter [would] be considered of importance by a reasonable insurer." *Drake Fishing, Inc. v. Clarendon American Ins. Co.*, 136 F.3d 851, 852 (1st Cir. 1998).  "Equivalent" language under the second part of the test includes provisions that state "in no uncertain terms that misrepresentation would result in a voiding of the policy." *Kobico*, 44 Mass. App. Ct. at 106.

There is no question that a reasonable insurer would consider an applicant's original signature important to its intelligent decision to issue a policy.  An original signature assures the insurer that the applicant has attested to the verity of her answers and that she consents to

and there is no other evidence of her assent in any form.

17

entering into the insurance contract.  Thus, the first prong of the test is met.  Furthermore, it is clear from RLI's documents that an original signature was a condition precedent to recovery.  On RLI's renewal application, the words "APPLICATION WILL NOT BE ACCEPTED WITHOUT APPLICANT'S ORIGINAL SIGNATURE" appear in bold just above the signature line. (Edelstein Aff. Ex. 16).  The application also states that "any . . . misstatement of fact in the information given, which if known to  . . . [RLI] would have caused  . . . [it] to decline this application, is grounds for voiding the policy."  (*Id.*).  Together these statements clearly communicate that a false signature would result in a voiding of the policy, fulfilling the second prong of the test.

In short, there is no evidence that Lima assented to the creation of an insurance contract. Even if she were somehow involved in the submission of the August application, her failure to sign it constituted a breach of a condition precedent and would permit RLI to void the policy as a matter of law.

### 3.      Whether Lima Failed to Update the Application

Even assuming that Lima submitted an application for the formation of an insurance contract, she nonetheless had a duty to advise RLI of the presence of a teenage driver in her household before the policy issued.

In Massachusetts, "[s]tatements made in an application for insurance are in the nature of continuing representations and speak from the time the application is accepted or the policy is issued."  *Hanover Ins. Co. v. Leeds*, 42 Mass. App. Ct. 54, 57 (Mass. App. Ct. 1997) (citing *Ayers v. Massachusetts Blue Cross, Inc.*, 4 Mass. App. Ct. 530, 536 (Mass. App. Ct. 1976)). Therefore, "an [insurance policy] applicant has a duty to inform the insurer of any known

changes rendering his or her initial representations untrue until such time as the policy becomes 'operative.'" *Chicago Ins. Co. v. Lappin*, 58 Mass. App. Ct. 769, 780 (Mass. App. Ct. 2003) (quoting *Gabbett v. Connecticut Gen. Life Ins. Co.*, 303 Mass. 433, 435 (Mass. 1939)).

Although she knew that Santos had received his driver's license on July 14, it is undisputed that Lima never made any attempt to advise RLI of that fact at any time before the policy became effective on September 10.  Drawing all reasonable inferences in favor of defendants, the Court will assume that the omission was unintentional.  Even a misunderstanding on the part of Lima, however, cannot prevent RLI from voiding the policy on those grounds.

Defendants assert that as a matter of law neither the policy itself nor the application required Lima to notify RLI of changes to the initial information that she provided.  In support of that argument, defendants cite to *Quincy Mutual Fire Insurance v. Quisset Properties*, 69 Mass. App. Ct. 147, 153 (Mass. App. Ct. 2007), in which the court held that "when neither a policy provision nor a renewal application requires the insured to provide updated information to the insurer, the insured's failure to do so is not a misrepresentation."  In that case, the insurer automatically renewed the insured's policy without requiring any renewal applications.  *Id.*

Defendants' reliance on *Quincy Mutual* is misplaced.  Unlike the insurer in *Quincy*, RLI required the applicant to provide updated information in a renewal application as a condition of renewing the policy.  *See id.* at 152-53.  That application obliged Lima to answer honestly and accurately and activated her duty to "inform [RLI] of any material changes that occurred between the time of the application and inception of the policy."  *Id.* (citing *Lappin*, 58 Mass. App. Ct. at 780).  Her failure to advise RLI that Santos had received his driver's license—even if she was not aware of her obligation to do so—was, under the circumstances, a misrepresentation.

19

The issue is, of course, complicated by Lima's contention that she did not sign or submit the August application.  But under any reasonable interpretation of the facts, there must have been a period of time during which an application was pending—and during which Lima had a duty to update.  It is undisputed that Lima signed and submitted the July application (which did not reveal the presence of a teenage driver).  Taking the facts in the light most favorable to the defendants, there are only three plausible possibilities:  (1) RLI reconsidered and accepted the July application on its own terms; (2) RLI accepted the July application after the problems were fixed by the submission of the omitted information in August; or (3) RLI rejected the July application permanently, after which a new application was submitted in August and later accepted.  But the policy had to be based on *some* form of application by Lima.  Surely it is unreasonable for her to believe that her insurance coverage had materialized out of thin air, without any application process.

Put simply, Lima cannot have it both ways:  she cannot have an insurance policy without an application indicating her assent to enter into an insurance contract.   And if she made an application—whether that application occurred in July or August or some combination of the two—she had an obligation to inform RLI of material changes that occurred after the time of the application.

In short, under any view of the undisputed facts, Lima reasonably should have known that RLI was proceeding in reliance on the statements she made in her application.  Lima was obligated to inform RLI of any material changes that occurred between the time of her application and the inception of the renewal policy.  *Lappin*, 58 Mass. App. Ct. at 780.  It is

20

undisputed that she never advised RLI that Santos had received a driver's license.  Her failure to do so gives RLI the right to void the policy.

**4.      Whether RLI Should Be Estopped from Relying on the July Application**

Defendants further contend that RLI should be estopped from relying in any way on the July application.  According to defendants, because RLI specifically identified misrepresentations on the *August* application (but not the July application) as the basis for its denial of coverage in its letter dated April 20, 2007, it is estopped from voiding the contract on the ground that the July application contained a misrepresentation.  In support of that proposition, they cite Mass. Gen. Laws ch. 176D § 3(9)(n), which states that "failing to provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim" is an unfair claim settlement practice.  That argument fails for several reasons.

First, RLI's explanation for denying coverage falls well below the level of an unfair settlement practice.  *See Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 217 F.3d 33, 40 (1st Cir. 2000) (noting that an insurance carrier that "in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy is unlikely to have committed a violation of G.L. c. 93A.") (quoting *Gulezian v. Lincoln Ins. Co.*, 399 Mass. 606, 613 (Mass. 1987)).  RLI's explanation—that misrepresentations on the August application were grounds for voiding the policy—appears to have been reasonable in light of the facts available to it at the time.[16]

---

[16] RLI's failure to interview Lima is not sufficient to suggest bad faith under the circumstances, particularly in light of Lima' failure to volunteer the information requested by RLI's claim examiner in its denial letters. (Edelstein Aff. Exs. 31-32).

Second, RLI explicitly reserved its right to present additional grounds for denying coverage in its letters.  Both of its denial of coverage letters cautioned that "[t]here may be other facts and circumstances, as well as other provisions of the policy, which would serve to relieve RLI  . . . . [T]his correspondence shall not be deemed or construed as a waiver of any of the rights and defenses available to RLI."  (Edelstein Aff. Exs. 31-32).

Finally, defendants do not appear to have been prejudiced in any way by RLI's failure to raise some claims in its denial of coverage letters, or to have detrimentally relied on those statements.  *See Jimmy's Diner v. Liquor Liab. Joint Underwriting Ass'n of Mass.*, 410 Mass. 61, 64 n.3 (Mass. 1991) (insurer not estopped from asserting alternative grounds for denying coverage where insured not prejudiced by the delay).

### 5.      Whether the Misrepresentation Was Material

Under Massachusetts law, a party seeking to void an insurance policy must not only show that there was a misrepresentation, but also that the misrepresentation was either intentional or material.  Mass. G. L. c. 175 § 186.  There is insufficient evidence to suggest that the misrepresentation (that is, Lima's failure to advise RLI of the presence of a young driver) was intentional, and thus the issue is whether it was material.

RLI contends that Lima's misrepresentation was material as a matter of law because it increased the risk of loss and affected the premium that she paid under her plan.[17]  Lima paid a premium of $224 for a "Standard" policy.  (Edelstein Aff. Exs. 2, 8).  RLI asserts that if she had revealed that Santos was a driver under the age of 22, she would have fallen under the "Standard

---

[17] RLI has asserted (in a footnote) that Lima's misrepresentations were made with the intent to deceive. However, as RLI appears to recognize, the question of Lima's intent is one of fact and, as such, it is not appropriate for resolution at the summary judgment stage. Furthermore, the Court must make the opposite assumption for the purposes of deciding these cross-motions.

with Inexperienced Operator" category, which requires a $358 premium.  (*Id.* Ex. 8).  According to RLI, the higher premium is charged to reflect the increased risk posed by inexperienced drivers.  As evidence of the higher rate, RLI has submitted a copy of its rate sheet for personal umbrella premiums in Massachusetts, effective July 15, 2005 for renewals.  (*Id.* Ex. 8).  The rate sheet defines "inexperienced operator" as "any driver with six years or less driving experience." (*Id.*).

In Massachusetts, the touchstone for "increased risk of loss" materiality is the premium. "For purposes of G.L. c. 175 § 186, a fact is deemed material if it influences the premium." *Barnstable Cnty.*, 425 Mass. at 128.  The calculation of a premium is actuarial in nature and does not depend on the facts relating to any particular insured; thus, the only factually relevant information is whether RLI did in fact charge a higher premium for adding drivers like Santos to the policy.  *Id.* at 128-129.  To the extent that defendants are challenging the authenticity or relevancy of the rate sheet, they have not raised a genuine issue of material fact.  The rate sheet states that it is effective May 1, 2005, for new business and July 15, 2005, for renewals.  (*Id.*). The accompanying affidavit states, "[a]ttached hereto as Exhibit 8 is a true and correct copy of a RLI Rate Sheet for Massachusetts, effective 2005."  (Edelstein Aff. at 2).  It is a reasonable inference, in the absence of any other evidence, that the premiums reflected on the rate sheet were in effect when Lima filed her renewal applications in July and August 2006.[18]  Defendants have presented no evidence that the rate sheet is inauthentic or inaccurate or that it was superseded by a different rate sheet.

It is also undisputed that providing coverage for Santos would have materially raised the

---

[18] In addition, the premium that Lima was charged after her renewal ($224) matches the premium associated with a "Standard" plan on the rate sheet.

premium for Lima's policy.  The RLI rate sheet defines "inexperienced operator" as "any driver

with six years or less driving experience."  There is no dispute that Santos met that definition at

the relevant time.  Furthermore, it is undisputed that Santos had obtained his driver's license by

the time RLI renewed Lima's policy on September 10.  At a minimum, therefore, Santos would

have certainly fallen under the definition of "driver," and therefore "inexperienced operator," at

the time Lima made the misrepresentation.[19]

### 6.    Whether Any Misrepresentation Had to Be Intentional

Defendants contend that under the policy language, RLI must show that the

misrepresentations were intentional in order to void the policy.  In support of their contention

defendants point to the following provision of the policy:

> K.  *Concealment - Misrepresentation*.  This insurance is void if you intentionally
> conceal or misrepresent any material fact or circumstance relating to this
> insurance at any time.

(Defs.' Mem. Ex. 10).  They also point to the following language in the renewal application:

> I understand that any omission or misstatement of fact in the information given,
> which if known by RLI Insurance Company would have caused [it] to decline this
> application, is grounds for voiding the policy.

(*Id.*).

Defendants interpret this language as stating that the only circumstances under which

RLI can void a policy is if a misrepresentation was intentional.  This is similar to defendants'

earlier estoppel argument and fails as a matter of law for similar reasons.  The language quoted

merely states that intentional misrepresentations are grounds for voiding the policy; it does not

state that *unintentional* misrepresentations are *not* grounds for voiding the policy.  Absent some

---

[19] Defendants also challenge the rate sheet by arguing that RLI does not have a "Preferred" rating class in
Massachusetts.  The Court does not see any relevant implications stemming from this fact.

prejudicial effect on defendants, of which there is no evidence here, there is no reasonable grounds for construing the policy language to limit RLI's ability to void the policy on other grounds.

\*      \*      \*

In summary, even when viewing the facts in the light most favorable to defendants, RLI is not obligated to provide coverage under the policy.  Either (1) the application for the policy contained a material misrepresentation, and the policy is therefore voidable; (2) no application or other document evidencing Lima's assent was ever submitted to RLI, and thus no insurance contract was ever formed; or (3) Lima failed to provide updated information to RLI after the application and before the issuance of the policy, and the policy is once again voidable. Summary judgment will therefore issue in favor of RLI on the declaratory judgment claim.

### B.      **Defendants' Counterclaims**

#### 1.      **Santos's Breach of Contract Claim (Count 2)**

Because RLI had the power to void the insurance policy for the reasons stated above, it did not breach the contract when it denied coverage to Santos.  RLI is thus entitled to judgment as a matter of law on Santos's claim for breach of contract.

#### 2.      **Santos's and Lopes's Chapter 93A Claim (Counts 1 and 3)**

The counterclaim of Santos and Lopes alleges that RLI violated Chapter 93A because it (1) misrepresented facts in its letter to Lima denying coverage; (2) failed to acknowledge and act reasonably in its communications with defendants; (3) did not conduct a sufficient investigation of the claims arising under Lima's policy; (4) did not provide a prompt and reasonable explanation for its denial of the claims; (5) submitted an inadequate offer of settlement; and (6)

acted in bad faith.  (Counterclaim ¶¶ 4-8, 18-21).  However, in defendants' replies to RLI's interrogatories, in their Chapter 93A demand letter, and in their briefs, the only alleged violations identified by defendant are (1) a claim that RLI's denial of coverage based on material misrepresentations by Lima was improper; (2) a claim that, after discovering the misrepresentations in the renewal applications, RLI should have conducted interviews of defendants, Mancuso-Nowak employees, and Number One employees; and (3) a claim that RLI misrepresented facts when it stated that it had "confirmed" that Lima made misrepresentations in her August application, when in fact it had not interviewed Lima to find out if she had filled out the form.  As a matter of law, defendants' assertions do not rise to the level of "unfairness" prohibited under Chapters 93A.

Defendants' first claim—that RLI wrongly denied insurance coverage—necessarily fails. Generally, claims under Chapters 93A and 176D "[fall] away by derivation" once a court determines that denial of coverage is proper.  *Aguiar v. Generali Assicurazioni Ins. Co.*, 47 Mass. App. Ct. 687, 692 (Mass. App. Ct. 1999) (affirming trial court determination that insurer properly denied coverage for fire loss and, therefore, claims asserting unfair settlement practices against insurer were unsustainable).  Here, the Court has determined that RLI had the right to void the policy.  RLI therefore had a reasonable foundation for denying coverage and was not acting in bad faith when it did so.

As to defendants' second claim, the Court does not find that the failure of RLI to interview defendants and other parties amounted to a violation of Chapter 93A.  Insurers are bound to conduct investigations in a reasonable manner.  *See Van Dyke v. St. Paul Fire & Marin Ins. Co.*, 388 Mass. 671, 676-77 (Mass. 1983).  Here, RLI reasonably inferred that Lima had

made misrepresentations on both the July and August renewal applications.  Her signature, while varying slightly between the applications, appeared on both forms.  Neither form indicated that Santos was a teenage driver living in Lima's household.  At the time that it made its decision to deny coverage, RLI did not have any reason to believe that anyone other than Lima had filled out the August renewal application.  Moreover, even when RLI learned during discovery that Lima denied completing the August application, it had several other bases for denying coverage for which interviews of the defendants and other parties was not necessary.

Finally, defendants' third claim—that RLI acted improperly when it stated that it had "confirmed" Lima's misrepresentations—also fails.  This statement does not rise to the level of a misrepresentation, much less a Chapter 93A violation.  As stated above, RLI had ample reason to believe that Lima had made misrepresentations on her applications.

In sum, neither RLI's handling of the claim nor its coverage position rise to the level of unfair trade practices or otherwise constituted violations of Chapters 93A or 176D.

**IV.**    **Conclusion**

For all the foregoing reasons, the motion of plaintiff RLI Insurance Company for summary judgment is GRANTED and the motion of defendants for summary judgment is DENIED.

**So Ordered.**

                                                 /s/ F. Dennis Saylor
                                                 F. Dennis Saylor IV
Dated: September 30, 2010                        United States District Judge